UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAWNA T. USE,<br><br>                Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,<br><br>                Defendant. | CASE NO. 2:16-CV-01675-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

      Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 6.

      After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by failing to properly evaluate whether Plaintiff's macular degeneration constituted a severe impairment at Step Two of the sequential evaluation. The ALJ also erred in failing to

properly evaluate the opinion of one non-examining psychologist. Therefore, this matter is reversed and remanded, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

## **PROCEDURAL& FACTUAL HISTORY**

On May 10, 2013, Plaintiff filed applications for DIB and SSI. *See* Dkt. 9, Administrative Record ("AR") 198-211. Plaintiff alleges she became disabled on January 1, 2009, due to Post-Traumatic Stress Disorder ("PTSD"), lumbar stenosis, gender identity disorder, macular degeneration with vision loss, and frequent cellulitis infections. *See* AR 198, 241. Plaintiff's applications were denied upon initial administrative review and on reconsideration. *See* AR 86-87, 122-23. A hearing was held before an ALJ on May 19, 2015, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 31. During the hearing, Plaintiff amended her disability onset date to April 24, 2012. AR 33.

On June 26, 2015, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 22. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 19, 2016, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On October 27, 2017, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ: 1) improperly found Plaintiff's macular degeneration was not a severe impairment at Step Two of the sequential evaluation; 2) failed to properly evaluate the opinions of one non-examining and one examining psychologist; and 3) the ALJ improperly discounted Plaintiff's subjective symptom testimony Dkt. 11, p. 1.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I. Whether the ALJ Erred by Failing to Consider Plaintiff's Macular Degeneration to be a Severe Impairment at Step Two of the Sequential Evaluation.

At Step Two of the sequential evaluation, the ALJ must determine if a claimant has a "severe medically determinable physical or mental impairment." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2015) . *See also Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted). Impairments must result "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). A medically determinable impairment is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(a)(4)(iii) & (c), 416.920(a)(4)(iii) & (c); *see also* SSR 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding

appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

The Step Two inquiry, however, is merely a threshold determination as to whether a claimant has raised a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). *See also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (noting the Step Two determination is a *de minimis* screening device used to dispose of groundless claims). "Ample authority cautions against a determination of nondisability at step two." *Ortiz v. Commissioner of Social Sec.*, 425 Fed.Appx. 653, 655 (9th Cir. 2011) (*citing Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005), *Smolen*, 80 F.3d at 1290. An impairment or combination of impairments may be found "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290.

Here, Plaintiff argues she presented sufficient evidence to demonstrate her macular degeneration was a severe medically determinable impairment. The record reflects Plaintiff had 20/200 visual acuity on a Snellen eye test in August, 2013, despite a prior history of eye surgery. AR 603, 615. Plaintiff was referred to an ophthalmologist at that time. AR 615. At her hearing, Plaintiff testified she had difficulty seeing out of her right eye, and her prior ophthalmologist had advised her they would be unable to help her. AR 42. Further, two state agency medical consultants opined Plaintiff's macular degeneration constituted a severe medically determinable impairment, and concluded this would lead to Plaintiff experiencing limited near and far visual acuity in her right eye. AR 76, 79-80, 111, 115.

The ALJ discounted this evidence by noting Plaintiff had failed to seek treatment for this condition "during the period at issue." AR 14 (citing AR 601-10, 615). The ALJ also noted

Plaintiff's 20/200 visual acuity result on the Snellen eye test was obtained without glasses, and the examining physician who performed the test, Paul Seville, M.D., did not assess any limitations arising out of Plaintiff's visual acuity. AR 14, 603. The ALJ's reasoning, however, was improper. For instance, the record indicates, prior to the period at issue, Plaintiff had unsuccessfully treated for her macular degeneration through surgery and medication. AR 601. Plaintiff also testified her medical providers had, at that time, informed her further treatment would be ineffective. AR 42.

Further, while Dr. Seville did not assess any limitations arising out of Plaintiff's macular degeneration, two state agency medical consultants did opine to limited near and far visual acuity based on Plaintiff's macular degeneration and 20/200 right-eye Snellen score. However, the ALJ failed to discuss either state agency medical consultant at Step Two. Instead, the ALJ discounts both state agency medical consultants' opinions later in the written decision, solely by reference to the fact he found Plaintiff did not have a severe visual impairment at Step Two. This reasoning is plainly circular. The ALJ cannot ignore significant, probative evidence of limitations at Step Two of the sequential evaluation, then address and discount that evidence at a later stage based solely on his prior Step Two findings. Such a cart-before-the-horse approach will not satisfy the ALJ's responsibility to support his findings with substantial evidence.

Finally, the ALJ discounts the 20/200 Snellen visual acuity score for Plaintiff's right eye as the test was performed "without glasses." AR 603. However, Dr. Seville's 20/200 score is the *only* right eye visual acuity measure in the record. This contrasts with the fact that records for Plaintiff's *left* eye reflect a score of 20/50 without glasses, and 20/30 with glasses. AR 80, 603. At best, Plaintiff has presented sufficient evidence to demonstrate her macular degeneration caused impairments in her right-eye visual acuity which had "more than a minimal effect on an

individual's ability to work." *Smolen*, 80 F.3d at 1290. At worst, the contrast between Plaintiff's left eye and right eye testing creates an ambiguity in the evidence the ALJ should have resolved, either by obtaining additional records or recontacting Dr. Seville, before determining Plaintiff's macular degeneration was not severe. *See* 20 C.F.R. §§ 404.1520b, 416.920b. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

As Plaintiff has presented evidence sufficient to demonstrate she had the severe impairment of macular degeneration, the ALJ erred. Further, the error is not harmless. An error is harmless if "there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*quoting Batson v. Comm'r of Soc. Sec. Admin*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Thus, if a claimant prevails at Step Two and the ALJ considers all impairments—regardless of severity—in the subsequent steps, an ALJ's failure to consider an impairment "severe" is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). *See also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007), *Garcia v. Commissioner of Soc. Sec.*, 587 Fed.Appx. 367, 370 (9th Cir. 2014). While Plaintiff prevailed at Step Two, the ALJ did not consider Plaintiff's visual impairments at all in the remainder of the decision. AR 13-14. In fact, as discussed above, the ALJ explicitly discounted two medical opinions when evaluating Plaintiff's residual functional capacity, simply because they included limitations arising out of Plaintiff's macular degeneration. AR 18. As the ALJ failed to consider Plaintiff's macular degeneration throughout the remainder of the five-step sequential evaluation, the ALJ's error was harmful, and requires remand.

II. <u>Whether the ALJ Properly Evaluated the Medical Opinion Evidence.</u>

**A. Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

**B. Application of Standard**

1. *John F. Robinson, Ph.D.*

Dr. Robinson reviewed Plaintiff's application for disability benefits and rendered an opinion as to Plaintiff's mental residual functional capacity on January 9, 2014. AR 101. Dr. Robinson diagnosed Plaintiff with Anxiety Disorder, Personality Disorder, Affective Disorder, and Learning Disorder. AR 95. When evaluating whether Plaintiff met the requirements of a listing, Dr. Robinson opined Plaintiff had mild restrictions in her activities of daily living,

moderate limitations in her social functioning and in maintaining concentration, persistence, or pace, and no episodes of decompensation. AR 95. Dr. Robinson further opined Plaintiff's severe mental health impairments would lead to moderate limitations in her ability to: understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors. AR 100-101. Though Dr. Robinson opined Plaintiff's concentration, persistence, and pace would wax and wane from time to time due to psychological factors, he further opined Plaintiff would be able to redirect herself, focus, and concentrate enough to perform simple, routine tasks for two-hour intervals. AR 100-101, 117-18. Dr. Robinson noted Plaintiff could interact with the public, and work with coworkers and supervisors, in only a superficial manner. AR 101, 118. Dr. Robinson opined Plaintiff would require a "safe" workplace, which may require a careful choice of work venue in order to exclude Plaintiff's "PTSD-like anxiety triggers." AR 101, 118.

The ALJ discounted aspects of Dr. Robinson's opinion for four reasons:

> [1] Dr. Robinson opined that the claimant was capable of "at least simple repetitive tasks," yet continued to indicate that the claimant exhibited no more than mild limitations in concentration, persistence, or pace. [AR 88-121]. In his narrative, Dr. Robinson does not discuss the basis for this potential limitation. Thus, this portion of his opinion is either too vague or internally inconsistent. Thus, I have not adopted this limitation. However, I note that the work identified by the vocational expert at the fifth step of the sequential evaluation is consistent with this limitation. [2] Dr. Robinson also posited social limitations that are generally consistent with the finding above. [3] Finally, Dr. Robinson proposed a "safe" work environment, which was apparently an instruction to Vocational Rehabilitation, rather than a reflection of the claimant's residual functional capacity. *See* [AR 96]. [4] Dr. Robinson opined that the claimant's sexual orientation and transgenderism would exclude some work venues such as the military. However, the hiring practices of employers is not a relevant consideration in the sequential evaluation process. Thus, I have not adopted this suggestion in the above finding either.

AR 19. Plaintiff argues the ALJ erred by failing to include Dr. Robinson's opined social limitations in the ALJ's residual functional capacity assessment, and the Court agrees.

Normally, the Court reviews an ALJ's rejection of a non-examining physician's opinion to determine if the ALJ offered specific reasons supported by the medical record. *See Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). However, Plaintiff's principal objection to the ALJ's evaluation of Dr. Robinson's testimony is not that the ALJ offered improper reasons for discounting Dr. Robinson's social limitations. Instead, Plaintiff argues the ALJ erred by failing to include Dr. Robinson's opined social limitations in the residual functional capacity finding, despite purporting to give them weight. An ALJ errs by purporting to give great weight to a physician's opinion, yet failing to include all of the physician's opined limitations into the residual functional capacity. *See Betts v. Colvin*, 531 Fed.Appx. 799, 800 (9th Cir. 2013). Further, an ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

Here, the ALJ found Plaintiff had the residual functional capacity to have "occasional and superficial contact with the general public . . . ." AR 13. The ALJ found this to be generally consistent with Dr. Robinson's opined social limitations. AR 19. However, Dr. Robinson opined Plaintiff would have moderate limitations in her ability to interact with both the general public *as well as* her supervisors. AR 101, 118. Dr. Robinson also opined Plaintiff could work with coworkers and supervisors in a superficial manner only. AR 101, 118. The ALJ does not address Dr. Robinson's opined limitations concerning supervisor and coworker interaction anywhere in the written decision, nor did the ALJ propound a hypothetical question to the vocational expert

which addressed such limitations. AR 19-27. The ALJ's failure to incorporate these limitations into the residual functional capacity finding, or otherwise provide a specific and legitimate reason for rejecting these limitations, renders the ALJ's residual functional capacity finding incomplete and unsupported by substantial evidence. *See Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012); *Betts*, 531 Fed.Appx. at 800.

Defendant argues the ALJ nonetheless properly discounted Dr. Robinson's opinion because it was "vague and internally inconsistent." Dkt. 12, p. 4. But, this reason is applicable only to one articulated limitation in Dr. Robinson's opinion. The ALJ discounted Dr. Robinson's limitations to simple, repetitive tasks as it was purportedly vague or internally inconsistent with the rest of Dr. Robinson's opinion. AR 19. However, the ALJ explicitly indicates he discounted other aspects of Dr. Robinson's opinion for different reasons. For example, the ALJ discounted Dr. Robinson's opinion concerning Plaintiff's need to work in a "safe" environment, not due to inconsistency or vagueness, but because the ALJ read this limitation to be an instruction to Vocational Rehabilitation, rather than a functional limitation. AR 19. The ALJ also does not indicate he rejected Dr. Robinson's opined social limitations whatsoever. AR 19. Thus, while the ALJ may have offered one valid reason to discount one aspect of Dr. Robinson's opinion, that reason does not bolster the balance of the ALJ's analysis by its mere proximity. *Cf. Dale v. Colvin*, 823 F.3d 941, 945-46 (9th Cir. 2016) ("[A]n ALJ errs when he discounts an other source's *entire* testimony because of inconsistency with evidence in the record, when the ALJ has divided the testimony into distinct parts and determined that only one part of the testimony is inconsistent.").[1]

---

[1] In any event, the ALJ's conclusion there was an internal inconsistency in Dr. Robinson's opinion is suspect. Contrary to the ALJ's statement about the opinion being vague

Because the ALJ failed to articulate a specific reason, supported by substantial evidence, for discounting Dr. Robinson's opined social limitations, the ALJ erred.

2. *T. Christopher Portman, Ph.D.*

Dr. Portman examined Plaintiff on March 28, 2013. AR 722. On examination, Plaintiff presented with moderately anxious mood. AR 722. Otherwise, however, Plaintiff presented entirely within normal limits on mental status examination. AR 22. Dr. Portman diagnosed Plaintiff with PTSD, assessed a GAF score of 60, and opined Plaintiff would have severe limitations in her ability to: perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and maintain appropriate behavior in a work setting. AR 721. Dr. Portman also assessed marked limitations in Plaintiff's ability to understand, remember, and persist in tasks by following detailed instructions; respond to changes in a routine work setting; and set realistic goals and plan independently. AR 721.

The ALJ gave Dr. Portman's opinion little weight for four reasons:

> [1] [Dr. Portman's evaluation] occurred prior to the amended alleged onset date. [2] Furthermore, while Dr. Portman check [sic] boxes indicating a variety of significant limitations, including an inability to maintain appropriate behavior in a work setting, he did not explain any of these limitations. [AR 721]. [3] The MSE was entirely normal. [AR 722]. Since he is not one of the claimant's providers, there are no contemporaneous notes to explain such limitations either.
>
> [4] Furthermore, he assigned the claimant a [GAF] score of 60, which appears inconsistent with the limitations he assessed. [AR 720]; Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV). As explained below, I have not

---

and internally inconsistent, Dr. Robinson repeatedly documented moderate, rather than mild, limitations in Plaintiff's concentration, persistence, and pace. AR 95, 100-01, 117-18. Also, contrary to the ALJ's findings, Dr. Robinson did explain these limitations by noting "[Plaintiff's concentration, persistence, and pace] would wax and wane from time to time due to psych factors, but she can redirect self, and focus and concentrate enough to perform [simple, routine tasks] for at least two hour intervals." AR 101.

assigned significant weight to GAF scores, but this score is indicative of internal inconsistency in this form. Given the inconsistency and lack of explanation for the significant limitations checked by Dr. Portman, I assigned this form minimal weight.

AR 20.

The Court notes the ALJ's first reason for discounting Dr. Portman's opinion is plainly erroneous. Plaintiff amended her disability onset date to April 24, 2012. AR 10, 33. Dr. Portman examined Plaintiff and rendered his opinion on March 28, 2013. AR 722. However, the ALJ properly discounted Dr. Portman's opinion due to his failure to explain his opinion, and due to the apparent contradiction between his assessed marked and severe limitations and his otherwise entirely normal examination findings. *See Batson,* 359 F.3 at 1195 (discounting a claimant's treating physician opinion because it was "conclusory, brief, and unsupported by the record as a whole"). Nonetheless, as discussed above, the ALJ erred in evaluating Dr. Robinson's opinion. Thus, on remand, the ALJ should reevaluate Dr. Portman's opinion.

III. Other Assignments of Error

In addition to the foregoing, Plaintiff also argues the ALJ erred by improperly discounting Plaintiff's subjective symptom testimony, and in finding Plaintiff was capable of performing other jobs existing in significant numbers in the national economy. However, in light of the ALJ's error at Step Two and in evaluating the medical opinion evidence, the ALJ will necessarily need to reconsider these findings on remand.

**CONCLUSION**

Based on the foregoing reasons, the Court finds the ALJ committed harmful error by failing to consider Plaintiff's macular degeneration to be a severe medically determinable impairment at Step Two, and by failing to properly evaluate Dr. Robinson's opinion. Therefore, the Court orders this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. §

405(g). On remand, the ALJ should evaluate whether Plaintiff has the severe impairment of macular degeneration, re-evaluate the medical opinion evidence, re-evaluate Plaintiff's subjective symptom testimony, re-evaluate Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation as appropriate. The ALJ should also develop the record as needed. Judgment should be for Plaintiff and the case should be closed.

Dated this 21st day of April, 2017.

David W. Christel
United States Magistrate Judge